**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **: CRIMINAL NO. 20-199-01(ZMF)(BAH)** |
| | : |
| | : |
| **v.** | : |
| | : |
| **BRITTANY NICOLE ADAMS,** | : |
| | : |
| **Defendant.** | : |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(E). The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**I. Procedural History**

On September 23, 2020, a grand jury for the District of Columbia returned an indictment, charging defendants Brittany Nicole Adams, and Steven Anthony Benson, Jr., with Conspiracy to Distribute Explosive Devices, in violation of Title 18, United States Code, Section 371, and three counts of Unlawfully Distribution of Explosive Devices, in violation of Title 18, United States Code, Sections 842(a)(3)(B) and 844(a)(1). On September 25, 2020, at the defendant's initial appearance, the government orally requested the detention of the defendant pending trial and requested a hearing for the defendant's detention pending trial. The government's request was granted and a detention hearing for the defendant is scheduled for Monday September 28, 2020.

## II. <u>Legal Authority and Argument</u>

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." <u>18 U.S.C. § 3142(f)</u>. Specifically, the presentation of hearsay evidence is permitted. <u>Id</u>.; <u>United States v. Smith</u>, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." <u>United States v. Martir</u>, 782 F.2d 1141, 1145 (2d Cir. 1986); <u>United States v. Williams</u>, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. <u>Smith</u>, 79 F.3d at 1210, <u>see also</u> <u>Williams</u>, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

### A.    <u>Nature and Circumstances of the Offenses Charged</u>

**Brief Summary:** On June 30, 2020, July 1, 2020, and July 17, 2020, an undercover agent (hereinafter "UC") with the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF") purchased several explosive devices from the defendants. All three purchases were

recorded by undercover audio and video. Initially ATF had previously received information regarding several explosive devices offered for sale on the website "OfferUp.com." The pictures of the devices on the website appeared to be explosives devices and the listing stated "Dynamite" for local pickup in Washington, D.C.

**PURCHASE 1**

During the course of the ATF's investigation, the UC contacted an individual later identified as Brittany Nicole Adams (hereinafter "Adams") via an advertisement posted on the OfferUp application under the user name Bribri for "dynamite." The UC and Adams exchanged a series OfferUp messages and SMS/MMS electronic messages over her cellphone discussing the purchase of the "dynamite." Through these messages, Adams agreed to sell the UC the "dynamite" and provided him with her phone number to contact Adams for further communication.

On June 30, 2020, at approximately 4:24 pm, the UC conducted a controlled purchase of eleven (11) explosive devices from Adams in the parking lot area of the Metro Station located at 4500 Benning Road, Northeast, Washington, D.C. Specifically, when the UC arrived at the aforementioned location, he sent Adams a SMS message to Adams' cellphone advising that he had arrived. Adams responded to that message stating that she would come to the UC. Adams arrived in a silver Acura 4D bearing Virginia registration UUL2542, which was registered to defendant Steven Anthony Benson, Jr., (hereinafter "Benson"). Adams was in the front passenger seat and a black male drove that vehicle. Adams told the UC that her brother manufactures the devices after work and that the UC could purchase more in the following days. At that time, the UC gave Adams $460.00 in United States currency of pre-recorded ATF funds in exchange for the eleven (11) explosives devices.

Below is a photo of the items purchased on that day. Please note the actual size of the explosive devices are significantly larger and wider than depicted in the photo.



**PURCHASE 2**

On July 1, 2020, again following an exchange of SMS messages over Adams' cellphone, at approximately 4:33 pm, the UC conducted a second controlled purchase of several explosive devices from Adams and Benson in the parking lot area of the Metro Station located at 4500 Benning Road, Northeast, Washington, D.C.

When the UC arrived at the aforementioned location, he sent Adams a SMS message to her cellphone advising that he had arrived. Adams responded to that message stating that she would come to the UC. Adams arrived in the same vehicle, was in the front passenger seat, and a black male drove that vehicle. Adams handed the UC a clear plastic bag containing four (4) large brown in color suspect explosive devices, one (1) red, white and blue device, and several smaller red in color devices in exchange for $320.00 in United States currency of pre-recorded ATF funds. The UC then asked Adams about larger devices. Adams then asked the driver of the vehicle, who was later identified as Benson, whether or not he had the "big red one left." Benson indicated that he did. Adams then stated that she did not have the device with her but it was nearby and she would go get it, then the defendants drove off. The UC remained at the Metro Station parking lot. At approximately 4:49 pm, Adams and Benson returned in Benson's vehicle. At that time, Adams handed the UC one additional very large explosive device. The UC gave Adams $400 in United States currency pre-recorded ATF funds for the sale of that additional device.

Below are photos of the items purchased on that day. Please note the actual size of the explosive devices are significantly larger and wider than depicted in the photo. However, the largest explosive device sold by the defendants, as shown with the ATF agent holding the explosive device in his hand, was measured over 15 inches long and 3 1/2 inches diameter.





**PURCHASE 3**

On July 17, 2020, at approximately 11:05am, the UC conducted a controlled purchase of four explosive devices from Adams and Benson in the parking lot area of the Home Depot located at 901 Rhode Island Avenue Northeast, Washington, D.C. When the UC arrived at the aforementioned location, he sent Adams a SMS advising that he had arrived. ADAMS responded to that message stating that she was present.

When Adams arrived, she was the front seat passenger same vehicle mention above. The vehicle was driven by Benson, whereby Adams then exited the vehicle, opened the trunk and placed four suspected explosive devices into a black plastic bag. Adams then handed the UC this plastic bag containing the suspected explosive devices. The UC then asked about an additional, larger device, to which Adams responded that she would have to ask her brother and let the UC know if he had any more. The UC provided Adams with $150 in United States currency of pre-recorded ATF official funds in exchange for the explosive devices.

Below is a photo of the items purchased on that day. Please note the actual size of the explosive devices are significantly larger and wider than depicted in the photo.



**B.      Weight of the Evidence against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is very significantly strong. All three transactions by the defendants are captured on clear audio and video recording, which depicts the defendant's interactions with the undercover agent and will corroborates any expectant testimony of the undercover officer.

### C.     <u>The Defendant's History and Characteristics</u>

The third factor, the history and characteristics of the person, the government notes that according to the Pretrial Services Report that the defendant does not have a criminal history. However, the government avers that that factor does not outweigh detention in this matter and submits that the defendant should not be released.

### D.     <u>Danger to the Community</u>

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. The defendants advertised very substantial explosive devices to the public on social media. These devices sold by the defendants are very dangerous and of great power that each of the explosives devices could inflict great harm or death – by blowing off fingers, hands, and arms - if the devices went off in someone's hand or near their bodies. Simply put, by the defendant's actions in this matter and the fact that the defendant may still have access to other and similar explosive devices, the defendant represents a real and significant danger to any person and the community.

For these reasons, the government submits that the Court should order the defendant's detention during the pendency of this case to protect the community.

### III. Conclusion

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY
N.Y. Bar No. 4444188

By:     /s/ Emory V. Cole
        Emory V. Cole
        PA. No. 49136
        Assistant United States Attorney
        Federal Major Crimes Section
        United States Attorney's Office for D.C.
        555 Fourth Street, N.W., Fourth Floor
        Washington, D.C. 20530
        E-mail: Emory.Cole@usdoj.gov
        Telephone: (202) 252-7692