**EXHIBIT B**

```
 1              BEFORE THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,      .
                                     .  Case Number 20-cr-199
 4              Plaintiff,           .
                                     .
 5         vs.                       .
                                     .  Washington, D.C.
 6    BRITTANY NICOLE ADAMS,         .  September 28, 2020
                                     .
 7              Defendant.           .
      - - - - - - - - - - - - - - - -

 8

 9                  TRANSCRIPT OF DETENTION HEARING
                BEFORE THE HONORABLE ZIA M. FARUQUI
10                UNITED STATES MAGISTRATE JUDGE

11

12    APPEARANCES:

13

14    For the Government:          EMORY COLE, AUSA
                                   United States Attorney's Office
15                                 555 Fourth Street Northwest
                                   Washington, D.C. 20530
16                                 202-252-7566

17    For the Defendant:           CARA HALVERSON, AFPD
                                   Federal Public Defender's Office
18                                 625 Indiana Avenue Northwest
                                   Suite 550
19                                 Washington, D.C. 20004

20

21    Audio Transcriber:           Sara A. Wick, RPR, CRR
                                   333 Constitution Avenue Northwest
22                                 Room 4704-B
                                   Washington, D.C. 20001
23

24
      Video conference proceedings recorded by audio recording.
25    Transcript produced by audio transcription.
```

P R O C E E D I N G S

THE COURTROOM DEPUTY:  This is Criminal Case 20-199, the United States of America versus Brittany Nicole Adams.  The defendant is present for the video conference.

Emory Cole is representing the government.  Cara Halverson is representing the defendant.  Pretrial Services is Christine Schuck.  This matter is set for a detention hearing.

THE COURT:  Thank you again, everybody, and I thank you for your patience.

Ms. Halverson, I am going to start with you.  I wanted to talk with you again.  I know we spoke with you and your client on Friday.  Obviously, the situation has not changed in terms of the pandemic or any of the court's sort of functioning over the weekend.  I wanted to again confirm that your client is willing to proceed by video teleconference in order to maintain her safety and the safety of others.

MS. HALVERSON:  Yes, Your Honor.

THE COURT:  Thank you.

Again, we talked about this last week.  Ms. Adams, it is extremely important you feel like you have the opportunity to speak with your counsel.  If at any point during the proceeding this morning you feel like you have any questions, you can ask your counsel offline.  We will all step out, virtually speaking, of the room.  Or also we have the opportunity for you to make a phone call.

1     Of course, you can ask questions of me as well.  As I
2  reminded you during your arraignment, though, please recall
3  statements you make are on the record.  So you should be careful
4  what you are saying.  That's why it's also good to talk to your
5  lawyer first before you talk or say anything to the judge or
6  members of the court staff.
7     Okay?
8          THE DEFENDANT:  Yes.
9          THE COURT:  Thank you so much.
10     So we are here today for a detention hearing.  Mr. Cole, is
11  the government ready to proceed?
12          MR. COLE:  Yes, Your Honor.
13          THE COURT:  Great.  Mr. Cole, will you be proceeding
14  by proffer, I presume?
15          MR. COLE:  Yes, by proffer, Your Honor, and we
16  submitted a detention memorandum that we will substantially rely
17  on.  I just have a few additional statements.
18          THE COURT:  Please, go ahead.  Thank you.  I've read
19  your memorandum as well.
20          MR. COLE:  Your Honor, in this particular case, I
21  want -- I've thought of the factors that the Court must
22  consider, and one is whether or not the defendant had a criminal
23  history.  She does not.  Based on Pretrial, we are more than
24  aware of that.
25     But that's not the determinative factor.  In this case, as

1   I have demonstrated to you by the evidence and what the grand

2   jury saw was the shear size and nature of the items that were

3   sold by the defendants to the undercover agents, and the biggest

4   one, the second photograph with the agent standing there, is

5   over 15 inches long, 3.5 inches in diameter.  Those types of

6   devices, indeed all of them, have the potential to blow off

7   fingers, hands, arms, or even inflict death or serious bodily

8   injury.

9       Based on our investigation, the grand jury heard and they

10   did indict and the defendants' own statements indicate that this

11   was not the first time that they had engaged in selling these

12   explosive devices.

13       I wanted to make it very clear, our photographs that we

14   have, they did not show the magnitude, the size and diameter of

15   the items that were sold.  Some of them range in size from 5

16   inches long, 4 inches wide, to 2.5 inches long to 2 inches in

17   diameter, to 2.5 inches long to 1.25 inches long.  So these were

18   not what we would say are fireworks.  These were explosive

19   devices over the weight of the explosive material permitted by

20   10s of times greater than the weight.

21       I would note one thing.  In one of the conversations that

22   I've had with the undercover, as Ms. Adams even says, her

23   boyfriend, Mr. Benson, injured his hand or blew off some of his

24   fingers in previously dealing with these explosive devices.  So

25   they are dangerous.  They could cause truly a significant harm

1   to children and adults.

2       But then the other three factors you must consider, the

3   nature of the offense, in this case, we believe it is

4   significant.  Whether or not the defendant poses a danger to the

5   community, the evidence demonstrates she poses a severe danger

6   because the person or persons she was getting these items from

7   is still out there.  So these explosive materials are still out

8   there, and based on our investigation, she may still have access

9   to those items.

10      It is abundantly clear the community would be put at risk

11  if she is released and that there are no conditions that can

12  ensure the safety of the community if she is released.

13      So to the extent that the nature of the offense -- and

14  lastly, the strength of this case is unquestioned.  I know

15  defense counsel does not have the discovery yet, but I can vouch

16  to the Court that all three of the transactions themselves were

17  on video and audio tape, in the afternoon hours, bright and

18  sunny day, and I can vouch to the Court everything we put in our

19  submission is what the video, in fact, details.  So there will

20  not be a dispute on when, where, what time, and what the

21  defendant, Ms. Adams, what she did and what she said.  And

22  those -- and instant messages or text messages that were sent by

23  Ms. Adams to the undercover, all of those are preserved.

24      So in this case the evidence is significantly very strong

25  in this case, and there will be no doubt as to the defendant's

1  guilt.

2      So I will rest my statements on that, Your Honor, and I

3  will trust your wise wisdom and great intellect to make an

4  appropriate decision.

5          THE COURT:  Thank you, Mr. Cole.

6      Ms. Halverson?

7          MS. HALVERSON:  Thank you, Your Honor, and good

8  morning, everyone.

9      I want to thank Mr. Cole, by the way, for getting his

10  detention memo (indiscernible).  I very much appreciate that,

11  Mr. Cole.

12      So just to start off, Your Honor, this is not a presumptive

13  detention case.  Therefore, this Court is compelled to release

14  Ms. Adams on personal recognizance (indiscernible) bond, and we

15  submit that the Court cannot make a finding that there are no

16  conditions or combination of conditions that can reasonably

17  ensure her appearance or protect the public from her.

18      Your Honor, based on the four factors that we will go

19  through and additionally her eligibility for the high-intensity

20  supervision program, which Pretrial was able to confirm over the

21  weekend, we believe indeed there are a combination of conditions

22  that would ensure her appearance (indiscernible).

23      So to go through the four factors, Your Honor, that you

24  must consider, the first is the nature and circumstance of the

25  events as charged.  Mr. Cole is correct that we are dealing with

1    explosive devices and of a very serious nature, and they have

2    the potential to cause harm.  I am not going to try to argue

3    that they're not.

4        However, I think it is important for Your Honor to consider

5    two things.  The first is that there is a presumption of

6    innocence, and we will talk about the fact that there is

7    substantial weight to be given (indiscernible) the case against

8    her.  It is important for Your Honor to keep in mind, as I know

9    Your Honor is aware, that as of right now, as she stands before

10   you, Ms. Adams is presumed to be innocent of these charges.

11   (Indiscernible) is that even if all of the allegations in the

12   indictment are correct and are proven, that she obviously

13   contests, her (indiscernible) as facilitating in the financial

14   transaction of these explosives and not the manufacturer of the

15   explosives.  The manufacturer of these explosives and the

16   creation of them actually fall within (indiscernible) of her

17   co-defendant and not Ms. Adams.  She was (indiscernible) for her

18   friend who didn't (indiscernible) where he was the one who

19   manufactured the explosives.

20       And as far as defense counsel is aware, and the indictment

21   does not say otherwise, there was never a danger to the

22   community in this transaction because the (indiscernible) was

23   always in complete control.  And Ms. Adams, there is no evidence

24   that (indiscernible), and there is no evidence that Ms. Adams

25   ever intended to (indiscernible) in various ways.

1        And I will supplement that, Your Honor, though Mr. Cole is

2   correct that these are large devices, but (indiscernible) only

3   fireworks (indiscernible).  So I think that's actually what we

4   are talking about are homemade fireworks.  We aren't talking

5   IEDs or pipe bombs.  We're not talking about (indiscernible).

6   We are talking about homemade fireworks.

7        And I think given that these appear to be homemade

8   fireworks and she was not the manufacturer of the fireworks,

9   that she did not know how to put them together even if she

10   could, we think that all of the allegations that are now before

11   you show that she was simply the financial facilitator of the

12   transaction.

13        As far as the weight of the evidence against Ms. Adams, we

14   do agree with the government as to one thing.  There are

15   recordings.  There are text messages.  We are not going to

16   argue, that it does appear that the government does have a

17   strong case.

18        As far as her history and characteristics, Your Honor, my

19   client has no criminal history.  She is a 29-year-old high

20   school graduate.  After she finished high school, Your Honor,

21   she went on to trade school where she would train for medical

22   coding and billing.

23        Prior to this event, she had three jobs.  (Indiscernible)

24   supervisor for the (indiscernible), which obviously had to be

25   put on hold because of the pandemic.  She was also an inventory

1    specialist and was also a (indiscernible).

2         This was in addition to caring for her elderly mother, who

3    is listening in on the public line today.  Her mother in 2017

4    had a heart bypass surgery and because of that has suffered

5    severe complications from that surgery.  Her mother is basically

6    immobile.  She cannot get around the house without help.  She

7    needs her daughter's help to do the most menial of tasks during

8    the day.  Basically, in addition to those jobs that she is

9    serving in, Ms. Adams is functioning as her primary caretaker.

10   Her mother can barely walk, and she depends on her daughter for

11   every need, including trips to the physical therapist.

12   Especially in the age of COVID, Your Honor, her mother is

13   particularly vulnerable to the virus.

14        Even with everything on her plate, Your Honor, Ms. Adams

15   has extensive ties with the community.  And one of the ways that

16   she shows those close ties with the community is even with her

17   two jobs and caring for her mother, she still volunteers once a

18   month at her church for the homeless.  She has never failed to

19   appear for a court appearance.  She has never been in jail.  She

20   has never even been arrested before, Your Honor.  Pretrial

21   submitted that her re-arrest risk is low.

22        She never goes anywhere outside of the District of

23   Columbia.  Her family is all her world.  She has strong ties to

24   the community.  And to be honest, Your Honor, I think this past

25   event has been a very violent slap in the face for her.  For

1   somebody who has never been arrested before and being in D.C.

2   Jail, it's a very scary thing.  This is an additional motivation

3   for her to abide by any and all conditions that Your Honor

4   fashions.  She understands now more than she did before what

5   would happen if she violates her conditions.

6       And I think it is important to note, Your Honor, that while

7   the government did concede this factor, I would point out that

8   she has no criminal history.

9       And as far as danger to the community, Your Honor, I would

10  just point out something very simple.  The government maintains

11  that these transactions happened on June 30, July 30, and

12  July 17.  However, the government did not see fit to indict her

13  or arrest her until months after these transactions took place.

14      I would proffer to Your Honor that she is not actually that

15  much of a danger to the community if the government thought it

16  was fine to have her out in the community for months after these

17  transactions took place.  I don't want to guess why the

18  government (indiscernible).  Perhaps they were waiting for more

19  transactions to take place and build a stronger case.  But she

20  was not arrested until months after these transactions happened.

21  So I think the government (indiscernible) when they chose to

22  arrest her months after the transactions that she absolutely was

23  not a danger to the community to be out.

24      Your Honor, there are absolutely conditions that can assure

25  that she will be present for her court hearings and that she

1   will not be a danger to society.  And as I mentioned earlier on

2   in my statement, Pretrial was able to confirm over the weekend

3   that Ms. Adams is indeed eligible for the high-intensity

4   supervision program, and they were able to verify the address

5   with her mother.  It is only her and her mother that live at

6   that address.  No one else lives there.

7        The Court can place her on GPS monitoring and a curfew, and

8   (indiscernible) the Court can place her on home confinement

9   where she can't leave the house without permission.  We only ask

10  that you allow her to continue to be at home to take care of her

11  mother until disposition of her case.

12       We don't believe there are no conditions that will ensure

13  the safety of the community.  We do believe there are actual

14  conditions in this case.  She has a good home with a supportive

15  mother who can provide her with the additional motivation to

16  make sure that she complies with her pretrial release

17  conditions.

18       I think based on the four factors, Your Honor, they weigh

19  in favor of her release.  (Indiscernible) to permit Ms. Adams to

20  be released pending disposition of this matter.

21            THE COURT:  Thank you, Ms. Halverson.

22       Ms. Schuck, anything you would like to add?

23       PROBATION OFFICER:  Good morning, Your Honor.  This is

24  Christine Schuck with Pretrial Services.

25            THE COURT:  Thank you.  Anything you want to add with

1   respect to the current file?

2            PROBATION OFFICER:  Pretrial (Indiscernible).

3   However, Pretrial has been able to screen the defendant for the

4   high-intensity supervision program.

5            THE COURT:  Thank you so much.

6       Mr. Cole, you say that in one of the undercover

7   communications Ms. Adams mentioned that Mr. Benson had some

8   injuries sustained from the fireworks or device or whatever we

9   are calling them?

10           MR. COLE:  Yes.  She said her boyfriend.  We believe

11  Mr. Benson is a boyfriend of hers.  So he had injured his hands

12  and/or fingers with one of the devices previously.

13           THE COURT:  Thank you.

14           MR. COLE:  And I believe that can be verified, Your

15  Honor, with Mr. Benson.

16           THE COURT:  That's fine.  Thank you.

17      Ms. Adams, so your counsel has gone through the factors

18  that I have to consider under the Bail Reform Act, I would

19  assume.  There are four factors that I should consider when

20  making my determination of whether or not to keep you detained

21  pending your trial or disposition of your case.

22      As your counsel said, the presumption is for release.

23  However, the government has asked for your detention based on

24  the four factors.

25      I do not think that we need to consider whether or not

1    there are conditions to reasonably assure that you are present

2    for trial.  From what I can tell, there is no reason to think

3    that you pose a flight risk.  But the government has to then go

4    to a higher standard of clear and convincing evidence as to

5    whether or not you are a danger to the community.

6         At this point I think Ms. Halverson submits some very good

7    arguments, but I am still very concerned.  In particular, I

8    think there are two issues that -- we'll step through the

9    dangerousness to the community, but for where I am right now,

10   due to the nature of the ordnance in question, I think detention

11   is still appropriate.  So the nature and circumstances of the

12   offense that you are charged with, this is probably the most

13   important thing, and the -- my decision (indiscernible).

14        Your counsel as defense now will get basically the

15   government's detention memo yesterday as well as discovery

16   hopefully very near in the future.  It is possible that with

17   additional evidence, I will be willing to reconsider.  The good

18   news is that you can ask the district court judge in this

19   matter -- as early as after we finish this call, your counsel

20   can prepare a request to overrule my determination for

21   detention.  In part, I think one of the things that the Court

22   there will want to consider or if you come back before me is

23   exactly the nature of these devices.

24        I think, Ms. Halverson, you made an -- to me, you got to

25   the crux of the matter.  Is this an IED or a pipe bomb, or is it

1   dynamite as your client described it in her online ad, or is it

2   something else, or is it just fireworks, because if it's

3   fireworks, that (indiscernible) than what it is described as on

4   the web site for sale.  In her text messages, she described it

5   as dynamite, as well as on the OfferUp.com site, she listed it

6   as dynamite.  And then when she was communicating with the

7   undercover, she described it again as dynamite.

8        In terms of danger, we will get to that, but separate from

9   that, the nature and circumstances of the offense, I am just --

10  I see, obviously, her pictures in front of me.  It looks like a

11  large explosive device, and it looks fairly dangerous.  And so

12  for the nature and circumstances of the offense, I believe it is

13  one that in fact calls for detention.

14       I think that if you were able to provide testimony or

15  proffer something to the Court that really what is the

16  explosive, if it is nothing more than a firework that's

17  regulated.  I believe on the Fourth of July, I've traveled to

18  Virginia and other places where fireworks can be purchased.  If

19  this is not substantially different from that, I think that

20  would largely change my mind.  But at this time all I know is

21  what I see and what the claimed threat is on your sales.

22       The weight of the evidence against you, I appreciate,

23  Ms. Halverson, your practical explanation of it as derived from

24  Mr. Cole with the history and characteristics.  I think minus

25  those two, I think the weight of the evidence favors -- is in

1   favor of detention.  It is pretty clear that there is

2   substantial evidence.  However, I appreciate the government's

3   concession, and Ms. Halverson is correct, that the history and

4   characteristics weigh against detention.

5      I am truly sorry, Ms. Adams.  I'm sure this is a shock to

6   your system.  I am -- I applaud you for having no criminal

7   history.  Few people arrive before the Court (indiscernible),

8   which is that you are taking care of your mother, and you have

9   never been through the judicial system in the past.  It is a

10   harsh reality, and I believe that -- I hope this is a wake-up

11   call to you if, in fact, any of these allegations are true.

12      Ms. Halverson said you are presumed innocent, and I presume

13   you are innocent because that's what the law mandates.  However,

14   the (indiscernible) of evidence that I have to consider today, I

15   am concerned that in spite of your clean record and your duty

16   that you have to your family, that there is still a danger to

17   the community, which is the fourth factor.

18      The nature and seriousness of the offense, you know, the

19   evidence indicates that the defendant was able to

20   (indiscernible), at least undercover communications that

21   describe (indiscernible.)  Mr. Cole has proffered that at least

22   we have some evidence of injuries that have occurred from these

23   items.

24      So based on that, I think today there is a danger to the

25   community.  It's a community that is not just limited to the

1    people outside in the community.  It's a danger to the defendant

2    herself in handling these materials.  And because Mr. Cole

3    (indiscernible) to the source of supply, that poses a danger

4    that she could have (indiscernible) those items given that that

5    source is still there (indiscernible).

6         I will say that she is very close to getting a point, but

7    here, I will give the benefit as in the close call to the

8    government in that given that the purchases occurred, while I do

9    have some concerns about how strong the oral submission of your

10   argument is that it's a danger to the community (indiscernible)

11   dangerous if they had been left out (indiscernible).

12        So I will say that that -- it was a close call only because

13   of that, but still, in spite of that, the factor would weigh in

14   favor of detention, but the primary part, the fourth factor, the

15   nature and seriousness and the danger posed by everyone.

16        Ms. Halverson, you have the opportunity to appeal my

17   decision before a district court judge, Chief Judge Howell, to

18   go through these same factors.  Perhaps you will be able to

19   produce some additional evidence that may allay some of her

20   concerns that Ms. Adams does not demonstrate that you are a

21   danger to the community and the safety of other people in the

22   community.

23        My decision, of course, is without prejudice.  You can

24   also -- the district court judge may bring that decision back

25   before me on your bond status if she feels (indiscernible).  Of

1   course, that's up to you and the district court judge.

2       Ms. Halverson, do you have a status date?

3           THE COURTROOM DEPUTY:  Yes, Your Honor.  They have a

4   status date --

5           THE COURT:  Hold on one second.  I'm sorry.

6       Ms. Halverson, go ahead.

7           MS. HALVERSON:  Sorry.  I think it might have already

8   been assigned.

9           THE COURT:  Yes, it is assigned to Chief Judge Howell.

10      Is there a status date set?

11          THE COURTROOM DEPUTY:  Yes, Your Honor.  The status

12  date is for tomorrow, the 29th, at 11:15 before Chief Judge

13  Howell.

14          THE COURT:  She moves a quick docket.  So

15  Ms. Halverson, you have heard that tomorrow you're going to be

16  appearing.  Ms. Adams, that means you will be before the

17  district court judge tomorrow.  Again, that's -- with the very

18  short turnaround, I imagine Ms. Halverson, as she tries to get

19  additional evidence from the government, discovery in order to

20  possibly get the judge to revisit the detention determination,

21  she may need more time.  The good news is that district court

22  judges move very efficiently.

23      I will also remind you again that as your counsel said you

24  are presumed innocent.  Nothing that happens today reflects a

25  finding or determination that I or Chief Judge Howell will make.

```
1      This is a narrowly focused question on detention.

2              MR. COLE:  What time again tomorrow?

3              THE COURTROOM DEPUTY:  11:15.

4              MR. COLE:  Okay.  Thank you.

5              THE COURT:  Mr. Cole, anything else for the

6      government?

7              MR. COLE:  No, Your Honor.  Thank you.

8              THE COURT:  Ms. Schuck?  Anything from Pretrial?

9              PROBATION OFFICER:  No, Your Honor.  Thank you.

10             THE COURT:  Ms. Halverson?

11             MS. HALVERSON:  No, Your Honor.  Thank you.

12             THE COURT:  Thank you.  Ms. Adams, good luck to you.

13         (Proceedings adjourned.)

14

15

16

17

18

19

20

21

22

23

24

25
```

CERTIFICATE OF TRANSCRIBER

I, Sara A. Wick, certify that the foregoing is a true and correct transcript to the best of my ability from the audio-recording of the video conference proceedings in this matter.


/s/ Sara A. Wick_____          October 18, 2020_____
SIGNATURE OF TRANSCRIBER                 DATE